955 F.2d 1199
 22 Envtl. L. Rep. 21,012
 The NATIONAL WILDLIFE FEDERATION, the Minnesota Conservation
Federation, the Izaak Walton League of America,
and Leon Carney, Appellants,
v.
The AGRICULTURAL STABILIZATION AND CONSERVATION SERVICE, an
agency of the United States Department of
Agriculture, Appellee.
 No. 90-5483.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 11, 1991.
Decided Feb. 5, 1992.
 
 Anthony Turrini, Anchorage, Alaska, argued, for appellants.
 Catherine Fisk, Dept. of Justice, Washington, D.C., argued, for appellee.
 Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 The National Wildlife Federation, the Minnesota Conservation Federation, the Izaak Walton League of America, and Leon Carney, who were plaintiffs in the district court and to whom we refer collectively as NWF, request that we decide whether the Secretary of Agriculture, through the Agricultural Stabilization and Conservation Service, possesses the statutory or regulatory authority, pursuant to either the Food and Agricultural Act of 1962, 7 U.S.C.A. § 1339a (West Supp.1991) (Food Act) or 7 C.F.R. § 790.2(a) (1991), to issue a good-faith exemption from the Swampbuster provisions of the Food Security Act of 1985. See 16 U.S.C.A. §§ 3821-3824 (West Supp.1991). In granting summary judgment in favor of ASCS and thereby dismissing NWF's complaint, the district court held that ASCS possessed the authority to grant such an exemption and that its action was not arbitrary, capricious, or an abuse of discretion. See National Wildlife Fed'n v. ASCS, No. 3-89-674, Order at 3 (D.Minn. Sept. 5, 1990). Because Congress has amended Swampbuster and the Food Act since the district court's decision, we do not decide the question presented by the parties. Instead, we vacate and remand.
 
 I. BACKGROUND
 
 2
 This case, in essence, began in early 1985, when fourteen farmers in Minnesota petitioned their local watershed district for a permit to drain eighty-five acres of prairie wetlands in Yellow Medicine County. The enactment of the Food Security Act of 1985, on December 23, 1985, however, prohibited the farmers from draining the wetlands, on penalty of losing certain farm program benefits, including price supports, unless the proposed drainage was exempted from the Act. Generally, section 3821 provided that any person who produced an agricultural commodity on converted wetlands would be ineligible for various farm payments or programs "[e]xcept as provided in section 3822." 16 U.S.C. § 3821 (1988). Section 3822 provided that "[n]o person shall become ineligible under section 3821 ... for program loans, payments, and benefits" if one of several exemptions applied. Id. § 3822 (1988). Thus, the farmers sought a statutory exemption, known as a commenced determination, which would allow them to drain the wetlands if their project was "commenced" before Swampbuster was enacted. See id. § 3822(a)(1); 16 U.S.C.A. § 3822(b)(1)(A). Because Swampbuster is initially administered on the local level, the farmers sought a commenced determination from their ASCS county committee. See 7 C.F.R. §§ 12.6(b)(3)(viii), 780.4 (1991).
 
 
 3
 On April 23, 1987, the Yellow Medicine County ASCS Committee found that only preliminary engineering work had been done on the project prior to December 23, 1985, and, thus, that the project had not been "commenced" within the meaning of the regulations. See id. § 12.5(d)(4). The farmers appealed to the state ASCS committee, which, on May 18, 1987, reversed the county committee. Even though the state committee's determination was subject to further review by the Deputy Administrator of State and County Operations, see id. §§ 780.5, 12.6(b)(2), 12.12,[1] and, as of April 25, 1988, construction contracts had not yet been signed, the farmers went ahead with the project, which was completed by September 1, 1988.
 
 
 4
 On August 16, 1988, however, in apparently the first environmentally-motivated appeal considered by ASCS, see Turrini, ASCS Gets Serious About Swampbuster, National Wetlands Newsletter (Envtl.Law Inst.) at 8-9 (Nov.-Dec. 1988), the deputy administrator reversed the state ASCS committee's ruling and denied the exemption. After further consideration, ASCS reaffirmed its decision that the farmers were not entitled to a commenced determination, but nonetheless granted them some relief. That is, the deputy administrator determined that "relief shall be granted to those producers who took actions or allowed actions to be taken on their behalf to drain specific wetlands on the basis of the Minnesota State Committee's May 18, 1987, commenced determination." Joint App. at 43. In essence, the relief saved the farmers from complete ineligibility for farm payments and programs under section 3821 should they put the converted wetlands into agricultural production.
 
 
 5
 NWF then filed this action in district court under the Administrative Procedures Act, challenging the authority of ASCS to grant relief. See 5 U.S.C. §§ 701-706 (1988). The district court noted that, although ASCS cited no legal authority supporting its decision, it "apparently based its decision on the good faith reliance provisions" of 7 C.F.R. § 790.2 (1991). National Wildlife Fed'n, Order at 2 n. 3. That section provides:
 
 
 6
 Notwithstanding any other provision of law, performance rendered in good faith in reliance upon action or advice of any authorized representative of a county committee or State committee ... may be accepted ... as meeting the requirements of the applicable program, and price support may be extended ... to the extent it is deemed desirable ... to provide fair and equitable treatment.
 
 
 7
 7 C.F.R. § 790.2(a).[2] Thus, the district court held that the administrative record demonstrated a substantial factual basis to support the deputy administrator's findings, and that the ASCS decision was not arbitrary, capricious, or an abuse of discretion. National Wildlife Fed'n, Order at 3. This appeal followed.
 
 II. DISCUSSION
 
 8
 On appeal, NWF asks us to hold that, because the only permissible exemptions to the ineligibility provisions of section 3821 are those statutory exemptions explicitly set forth in section 3822, ASCS exceeded its authority in granting relief. NWF points, in part, to the introductory language of section 3821: "Except as provided in section 3822 of this title and notwithstanding any other provision of law." From this language, NWF argues that the statute overrides any contrary regulation. ASCS responds by contending that the deputy administrator acted pursuant not to 7 C.F.R. § 790.2, but to 7 U.S.C.A. § 1339a, which provides for a good-faith exemption in the same language as the regulation, and from which the regulation is obviously derived. Like section 3821, section 1339a also begins, "[n]otwithstanding any other provision of law." The parties would have us decide this battle of statutory "notwithstanding[s]."
 
 
 9
 Since the decision of the district court, however, Congress has enacted, effective November 28, 1990, the Food, Agriculture, Conservation, and Trade Act of 1990, Pub.L. No. 101-624, 104 Stat. 3359 (1990). As part of this legislation, Congress substantially amended sections 3821 and 3822. Section 3822 now explicitly contains a statutory good-faith exemption. See 16 U.S.C.A. § 3822(h).[3] In essence, the new law provides that a person who would otherwise have been completely ineligible under section 3821 for farm programs and payments might instead be subject to a graduated sanction of not less than $750 nor more than $10,000, depending on the seriousness of the violation, if (1) the person is actively restoring the drained wetlands by agreement with the Secretary, and (2) the Secretary determines that the person has not otherwise violated section 3821 in the past ten years, and has converted the wetland "in good faith and without the intent to violate the provisions of section 3821." Id. § 3822(h)(1)(A), (B). Congress has also modified the Food Act by enacting changes in 7 U.S.C. § 1339a on December 13, 1991.[4] These changes provide additional authority to the Secretary to grant eligibility for price support or other payments when a farmer has been injured through good faith reliance on actions taken by representatives of the Secretary. We consider, therefore, the effect of these new laws on this case.
 
 A. Standing
 
 10
 Before we do so, we must consider the issue of standing. Even though ASCS did not file a cross-appeal from the district court's grant of summary judgment in its favor, we must address its arguments that, contrary to the district court's ruling, NWF lacks standing. See Goos v. I.C.C., 911 F.2d 1283, 1289 (8th Cir.1990) (court can consider standing even when raised for first time on appeal). More specifically, ASCS argues that the Minnesota Conservation Federation and the Izaak Walton League lack standing because neither organization submitted affidavits from any members alleging injury. ASCS also argues that individual plaintiff Leon Carney, a Minnesota farmer who alleges economic injury due to the increased production and falling prices that could result from draining the wetlands, does not allege an injury in fact that would be redressable by a favorable decision. ASCS does not, however, contend that NWF has failed to establish constitutional standing through the affidavits of several members.[5] As NWF points out, "where one plaintiff establishes standing to sue, the standing of other plaintiffs is immaterial." Reply Brief at 4. See, e.g., Bowen v. Kendrick, 487 U.S. 589, 620 n. 15, 108 S.Ct. 2562, 2580 n. 15 (1988). Thus, we consider only whether NWF has standing.
 
 
 11
 In one of the affidavits submitted to the district court, Dennis Haaland, an NWF member and farmer in Yellow Medicine County who lives approximately four miles from the drainage project, alleges that he regularly drives through the wetlands, that he appreciates their aesthetic beauty in part by watching and enjoying the wildlife living there, and that he has hunted the wetlands. Thomas Landwehr and John Schladweiler, both Minnesota wildlife biologists, make similar allegations, including their professional interest in the wetlands. Given these affidavits, we are unable to distinguish this case from National Wildlife Fed'n v. A.S.C.S., 901 F.2d 673, 675-77 (8th Cir.1990), in which we reversed the district court's decision that NWF lacked standing to challenge an ASCS exemption permitting about 6,500 acres of North Dakota wetlands to be drained. We held that allegations made by NWF members who enjoyed the recreational use and aesthetic beauty the wetlands afford, including watching, feeding, and hunting wetland wildlife, were " 'statements of specific injury experienced by ascertainable individuals who' live in or recreate in" the wetlands sufficient to establish injury. Id. at 677 (quoting Coalition for the Env't v. Volpe, 504 F.2d 156, 167 (1974)). Accord, Goos, 911 F.2d at 1290 (citing cases holding that allegations by ascertainable individuals who "merely reside near" an area threatened by environmental injury have an interest sufficient to support standing). In addition, we held in National Wildlife Fed'n that the allegations also satisfied the further constitutional requirement that the injury be traceable to the challenged action and redressable by a favorable decision, as well as the prudential requirement that the interests asserted be within the zone of interests meant to be protected by the statute. National Wildlife Fed'n, 901 F.2d at 677-78. Accordingly, we are satisfied that the affidavits submitted by NWF establish, sufficient to withstand summary judgment, that NWF members were "adversely affected or aggrieved" by the ASCS action. See 5 U.S.C. § 702; Lujan v. National Wildlife Fed'n, --- U.S. ----, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990).
 
 B. Retroactivity
 
 12
 The ASCS has now advised us of the changes in the statutes at issue in this action and claims that affirmance of the district court should now be a greater certainty. NWF states, of course, that we should not consider the changes, or, that they, in fact, support a reversal.
 
 
 13
 The Supreme Court's cases have not been clear when we should apply new law, effective after a lower court judgment but prior to a final decision on appeal. On the one hand, the Court has held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. Richmond School Bd., 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). On the other hand, the Court held in Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), that "[r]etroactivity is not favored in the law.... [C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." In the absence of clear legislative direction, one rule requires prospective application, the other retroactive. Indeed, the Court in Bradley explicitly rejected the approach followed in Georgetown: "[W]e must reject the contention that a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature." Bradley, 416 U.S. at 715, 94 S.Ct. at 2018. The Court itself has noted what it calls the "apparent tension" between the two rules, Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990), and what others have called the "irreconcilable contradiction," id. at 841, 110 S.Ct. at 1579 (Scalia, J., concurring), or "irreconcilable conflict." Simmons v. Lockhart, 931 F.2d 1226, 1230 (8th Cir.1991) (opinion of Arnold, J.). See also Criger v. Becton, 902 F.2d 1348, 1353-54 (8th Cir.1990) (noting "two apparently contradictory lines of decision"). Yet in its latest look at the issue, the Court declined to "reconcile the two lines of precedent", Kaiser, 494 U.S. at 837, 110 S.Ct. at 1577, and to hold, as Justice Scalia would, that "absent specific indication to the contrary, the operation of nonpenal legislation is prospective only." Id. at 841, 110 S.Ct. at 1579 (Scalia, J., concurring). Rather, the Court held that "under either view, where the Congressional intent is clear, it governs." Kaiser, 494 U.S. at 837, 110 S.Ct. at 1577. We must look first, then, to " 'the language of the statute itself' " to determine whether Congress intended the new sanctions provisions of Swampbuster to apply retroactively, and, if so, how to apply them in conjunction with the new authority contained in section 1339a. See id. at 835, 110 S.Ct. at 1576 (quoting Consumer Product Safety Comm'n v. GTE Sylvania, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Both the statute and the legislative history are clear that it did.
 
 
 14
 Subsection (h)(1) of 16 U.S.C.A. § 3822 provides that a person's ineligibility under section 3821 for price supports or payments for any commodity produced by that person may be modified by the application of a less drastic sanction, outlined in subsection (h)(2), if the ineligibility is the result of "the conversion of a wetland subsequent to the date of enactment of this subsection [November 28, 1990], or the production of an agricultural commodity on a converted wetland subsequent to December 23, 1985." 16 U.S.C.A. § 3822(h)(1). By the alternative dates mentioned, Congress clearly contemplated application of the new graduated sanctions to a conversion occurring before November 28, 1990, so long as the conversion was followed by agricultural production on the converted wetland. The precise phrasing merely reflects that the triggering event of ineligibility under section 3821 prior to amendment was not the conversion of a wetland, but the subsequent production of an agricultural commodity. See 16 U.S.C. § 3821(a). Post-amendment, however, mere conversion after November 28, 1990, seems to trigger the ineligibility provisions of section 3821. In subsection (h)(3) as well, Congress provides for application to events prior to the date of enactment. Subsection (h)(3) provides that "[t]he relief allowed by this subsection shall include the restoration of benefits withheld for violations that occurred prior to the date of enactment[6] of this section." In other words, those persons who have lost all payments or benefits as the result of conversion and subsequent agricultural production prior to November 28, 1990, can have the sanction of complete ineligibility modified by the new graduated sanctions.
 
 
 15
 While the congressional direction that the new Swampbuster law applies to events occurring before its enactment is clear from the language of the statute itself, we also note the same clarity in the legislative history. The House Conference Report indicates that "[t]he graduated sanctions provisions are made retroactive to violations that occurred prior to the date of enactment of this Act, if such violations fully meet the requirements of this provision." H.R.Conf.Rep. No. 101-916, 101st Cong., 2d Sess. 761, 914, reprinted in U.S.Code Cong. & Admin.News 5286, 5439 (1990). Thus, we are satisfied that Congress intended the new law to apply retroactively. In the words of Justice Scalia, the law "explicitly recites its application to pre-enactment events." Kaiser, 494 U.S. at 846, 110 S.Ct. at 1581 (Scalia, J., concurring). Accordingly, the new graduated sanctions provisions should be considered in disposition of this dispute.
 
 
 16
 We now turn to section 1339a as modified. The amendments to Swampbuster and the Food Act did not serve to strike either statutory "notwithstanding" or, unfortunately, directly eliminate the conflict in statutory language. The new section 1339a does state that it applies to actions taken by a representative of the Secretary "before, on, or after November 28, 1990." This would, obviously, encompass the time period at issue in this case. Thus, we think that this new authority must also be considered in disposition of this matter.
 
 III. CONCLUSION
 
 17
 Because the enforcement provisions of Swampbuster now explicitly provide for a good faith exemption to ineligibility under section 3821, and because this new law applies retroactively, we do not now decide whether ASCS possessed the statutory or regulatory authority to award such an exemption prior to the new law. We cannot dispose of the case because imposition of the new exemption would be markedly different than that of the good faith exemption the Secretary imposed in this case. Rather than a blanket exemption from ineligibility, the new exemption only reduces the amount of ineligibility. See 16 U.S.C.A. § 3822(h)(2). Moreover, the exemption and graduated sanctions apply only if the farmer "is actively restoring the wetland under an agreement entered into with the Secretary," id. § 3822(h)(1)(A), the Secretary determines that the farmer has not violated Swampbuster in the past ten years, and has converted the wetland "in good faith and without the intent to violate the provisions of section 3821." Id. §§ 3822(h)(1)(B)(i), (ii).
 
 
 18
 Also, because section 1339a now provides eligibility authority "in addition to any other authority provided to the Secretary under any other Act," we believe that the Secretary must now reconsider both Acts and the inter-relationship, if any, between the competing eligibility and exemption provisions. We think that this should be done, in the first instance, by the Secretary, subject, of course, to judicial review as it may become appropriate.
 
 
 19
 Accordingly, we vacate the judgment of the district court and remand this case with instructions that it be further remanded to the Secretary for application of the statutes, as amended. In doing so, we point out that nothing in the statutory changes keeps a farmer from retaining eligibility to participate in farm programs in any crop year in which production of an agricultural commodity is avoided on the converted wetlands at issue here. See 16 U.S.C. §§ 3821(a)(1)(A)-(E).
 
 
 
 [1]
 We note that section 780.5 provides that "any participant"--meaning any person whose right to receive farm payments is affected by the state committee's decision--may obtain review with the deputy administrator. See also 7 C.F.R. § 12.12 (1991); Hamilton, Legal Issues in Enforcing Federal Soil Conservation Programs: An Introduction and Preliminary Review, 23 U.C.Davis L.Rev. 637, 659 (1990) (noting the Secretary's position that "only the person or persons who face the loss of eligibility for USDA program benefits are adversely affected and have a right to an administrative appeal" (quoting 52 Fed.Reg. 35,197 (1987))). ASCS review at NWF's request, then, is discretionary
 
 
 [2]
 The statute underlying this regulation, 7 U.S.C.A. § 1339a, was substantially amended on November 28, 1990, the same date upon which changes discussed later in this opinion were made in the Swampbuster legislation
 
 
 [3]
 Section 3822(h) provides:
 (1) Good faith exemption
 A person's ineligibility under section 3821 of this title for program loans, payments, and benefits as the result of the conversion of a wetland subsequent to the date of enactment of this subsection, or the production of an agricultural commodity on a converted wetland subsequent to December 23, 1985, may be reduced under paragraph (2) if--
 (A) such person is actively restoring the wetland under an agreement entered into with the Secretary to fully restore the characteristics of the converted wetland to its prior wetland state, or such person has previously restored the characteristics of the converted wetland to its prior wetland state as determined by the Secretary; and
 (B) the Secretary determines that--
 (i) the person has not otherwise violated the provisions of section 3821 of this title in the previous 10-year period on a farm; and
 (ii) such person converted a wetland, or produced an agricultural commodity on a converted wetland, in good faith and without the intent to violate the provisions of section 3821 of this title.
 (2) Graduated sanctions
 If the Secretary determines that a person who has violated the provisions of section 3821 of this title meets the requirements of paragraph (1), the Secretary shall, in lieu of applying the ineligibility provisions in section 3821 of this title reduce by not less than $750 nor more than $10,000, depending on the seriousness of the violation, program benefits described in section 3821 of this title that such person would otherwise be eligible to receive in a crop year.
 (3) Relief
 The relief allowed by this subsection shall include the restoration of benefits withheld for violations that occurred prior to the date of enactment of this section.
 
 
 [4]
 Section 1339a now provides:
 Notwithstanding any other provision of law, to the extent the Secretary of Agriculture considers it desirable in order to provide fair and equitable treatment, the Secretary may make price support or other payments available to farmers who have, in attempting to comply with the requirements of any price support or other program administered by the Secretary or any other requirements in law affecting such persons's eligibility under such programs, taken actions in good faith in reliance on the action or advice of an authorized representative of the Secretary. The Secretary may provide such price support or other payments to the extent the Secretary determines such farmer has been injured by such good faith reliance and may require such farmer to take necessary actions designed to remedy any failure to comply with such programs.
 The authority provided in this section shall be in addition to any other authority provided to the Secretary under any other Act. This section shall be applicable to an action taken by a representative of the Secretary that occurs before, on, or after November 28, 1990. This section shall not apply to a pattern of conduct where authorized representatives of the Secretary take actions or provide advice with respect to producers that the representatives and producers know are inconsistent with applicable laws and regulations.
 Food, Agriculture, Conservation and Trade Act Amendments of 1991, Pub.L. No. 102-237, § 118(d), 105 Stat. 1818, 1842.
 
 
 [5]
 ASCS does contend that NWF has failed to satisfy the prudential requirement that its asserted interest fall within the zone of interests meant to be protected by Swampbuster. See Air Courier Conf. v. American Postal Workers Union, --- U.S. ----, 111 S.Ct. 913, 917-18, 112 L.Ed.2d 1125 (1991). To prevail on this argument, ASCS must show that the loss of wetlands is not an injury "within the meaning of the relevant statute," i.e., Swampbuster. Lujan v. National Wildlife Fed'n, --- U.S. ----, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990). ASCS argues that NWF members assert an interest only in "areas that once were wetlands, but which now have been drained," and that Swampbuster was not created to protect "former wetlands." See Brief for Appellee at 23 n. 10. This argument is misplaced at best. Either it misstates the facts by implying that the wetlands in this case were drained prior to the effective date of Swampbuster, or it would make any Swampbuster exemption granted by ASCS unreviewable in federal court if the landowners drained the wetland prior to a final judicial decision. Moreover, the argument assumes that the injury asserted would not be redressed by a decision reversing the exemption--that the landowners would put the drained land into production even without the exemption, and thereby lose their federal farm subsidies. In other words, ASCS contends that the enforcement measures found in section 3821 are inherently ineffective. We have already rejected this argument. See National Wildlife Fed'n v. A.S.C.S., 901 F.2d 673, 677-78 (8th Cir.1990). Cf. Affidavit of David S. Bullock, Joint App. at 88-102 (establishing that "[i]f the ASCS had not treated the Ditch 18 wetlands as exempt from Swampbuster, every farmer in the drainage area would have expected to suffer substantial financial loss if he had converted his wetland basins to cropland")
 
 
 [6]
 The statutory notes point out some uncertainty whether by "date of enactment" in subsection (h)(3) Congress meant November 28, 1990, the date of amendment, or December 23, 1985, the date of enactment of section 3822. Indeed, in subsection (h)(1)(A), Congress refers to "the date of enactment of this subsection " (emphasis added). While we think that "date of enactment" in subsection (h)(3) makes no sense if read to mean December 23, 1985, the date of conversion in this case is not at issue. The wording of the statute indicates that, in either case, the statute would apply retroactively