**UNITED STATES of America, Appellee,**

v.

**Thomas M. HIGGINS, Appellant.**

**Nos. 91–2736, 90–3525.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1992.

Decided March 8, 1993.

Karen B. Flowers, Lincoln, NE, for appellant.

Steven A. Russell, Asst. U.S. Atty., Lincoln, NE, for appellee.

Before MAGILL and BEAM, Circuit Judges, and LARSON,[*] Senior District Judge.

BEAM, Circuit Judge.

Thomas M. Higgins appeals his convictions and incarceration for filing false federal tax documents and for obstructing the administration of the federal internal revenue laws. *See* 26 U.S.C. §§ 7206(1) and 7212(a). He also appeals the district court's [1] post-conviction order that his bond be applied to the payment of restitution, court costs, and special assessments, pursuant to 28 U.S.C. §§ 2041, 2042, and 2044. We have consolidated Mr. Higgins' appeals and we affirm.

## I. BACKGROUND

Mr. Higgins created fictitious bills and mailed them to a number of individuals. When those individuals failed to pay the bills, he "forgave" the debt. Mr. Higgins then reported the "forgiven" debt to the IRS as income to the individuals involved. He also filed false personal returns claiming large amounts of fictitious personal income, which he reported as withheld, and requesting refunds for those amounts. Finally, Mr. Higgins reported the unwitting "debtors" to the IRS as income tax violators, requested that the IRS issue levies against those persons, and claimed rewards for providing information about the "violators."

Mr. Higgins was indicted for violations of the tax code, tried, and convicted. The district court sentenced Mr. Higgins to 46–months imprisonment followed by a one-year period of supervised release. The district court also ordered Mr. Higgins to pay

---

[*] The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Donald E. O'Brien, Senior United States District Judge for the Northern District of Iowa presided at trial. The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska presided at pretrial, sentencing, and post-conviction proceedings.

$3,351.20 restitution, a special assessment of $50 per count, prosecution costs, and the cost of his supervised release. During the criminal proceedings, Mr. Higgins posted an appearance bond, depositing $1,000 with the district court. After sentencing, he filed a motion with the district court for the return of his appearance bond. In response, the government filed a motion requesting that Mr. Higgins' bond be applied to the restitution and other monetary assessments which he had not yet paid. The district court granted the government's motion and ordered that the bond proceeds be applied to the costs owed by Mr. Higgins. Mr. Higgins appeals his conviction and incarceration, and the bond motion ruling.

## II. DISCUSSION

On appeal, Mr. Higgins raises a number of issues pro se, most of which are without merit. He challenges the district court's criminal jurisdiction over either himself or the tax offenses charged; he attacks the propriety of his indictment; he alleges ineffective assistance of counsel; he maintains that the IRS is comprised of foreign agents who may not appear in court; he argues that it is legally impossible for him to violate the statutes defining his offenses; he claims that he lacked the requisite mens rea for the offenses charged and that the district court failed to recognize his theory of defense; he asserts that the Uniform Commercial Code, rather than the Internal Revenue Code, should be applied to his conduct; he questions the constitutionality of the Federal Sentencing Guidelines; and he seems to complain of a denial of due process. No purpose would be served by further discussing these claims, as we have carefully considered each one and find them to be without merit. However, Mr. Higgins' bail bond complaint presents a colorable issue and we will therefore discuss it.

Mr. Higgins argues that the district court had no authority to order that his bail be paid to the government because 28 U.S.C. § 2044 (which directs district courts, on the government's motion, to apply convicted defendants' bonds to fines, restitution, and other monetary sanctions) was not in effect at the time he deposited his bail with the court.[2] Alternatively, Mr. Higgins argues that 28 U.S.C. § 2044 violates the Eighth Amendment's prohibition against excessive bail.

### A. Applicability of 28 U.S.C. § 2044

Mr. Higgins deposited his bond before 28 U.S.C. § 2044 became effective. However, section 2044 was in effect at the time of his sentencing and at the time he made his motion for the return of his bond. Mr. Higgins asserts that the government's motion, and the court's subsequent order that the bond funds be paid to the government, amount to a retroactive and therefore impermissible application of section 2044.

■■■ This contention must fail for several reasons. First, retroactivity limitations depend on actual changes in the law, not mere adjustments to procedure. *Denver & Rio Grande Western R.R. v. Bhd. of Ry. Trainmen*, 387 U.S. 556, 563, 87 S.Ct. 1746, 1750, 18 L.Ed.2d 954 (1967). Courts apply the procedure that is in effect at the time the action is before them. *Id.; see Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572 (1985) (courts are to apply the law in effect at the time the case is before them, except that changes affecting substantive rights are presumed to be prospective only). There are not, and cannot be, myriad separate sets of proper procedure, each dependent

2. The statute provides:
   On motion of the United States attorney, the court shall order any money belonging to and deposited by or on behalf of the defendant with the court for the purposes of a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and before sentencing except upon a showing that an assessment, fine, restitution or penalty cannot be imposed for the offense the defendant committed or that the defendant would suffer an undue hardship. This section shall not apply to any third party surety.
   28 U.S.C. § 2044.

upon when the case before the court commenced. This is a well-established canon, which is not implicated by the Supreme Court's conundrums over the retroactivity of statutory laws affecting preexisting substantive rights. *Compare Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (statutes presumed to apply to pending cases unless preexisting rights and expectations unjustly defeated) *with Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (traditional bias against retroactivity requires a plain statement of any congressional delegation of retroactive rulemaking authority to an administrative agency). Nor has our own analysis of the retroactivity issue implicated the basic canon that courts apply the procedure in effect when the case is before them. Only when *Georgetown* and *Bradley* are equally applicable to a retroactivity question do we apply *Georgetown*'s presumption against retroactive application of rules. *Hicks v. Brown Group, Inc.*, 982 F.2d 295 (8th Cir.1992) (en banc). Because section 2044 is purely procedural and merely codifies preexisting judicial discretion,[3] it works no real change in the applicable law and neither *Bradley* nor *Georgetown* apply. Therefore, any application of section 2044 to Mr. Higgins does not present a retroactivity problem. *See Bennett*, 470 U.S. at 639, 105 S.Ct. at 1559.

Secondly, even if we were to assume that section 2044 changed the applicable law, there would still be no retroactivity problem because Congress's intent to apply section 2044 to pending cases is discernible from the statute. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836–37, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990) (no need to resolve any apparent tension between *Bradley* and *Georgetown* when congressional intent as to retroactivity is discernible from analysis of statute); *Nat'l Wildlife Fed'n v. Agric.*

*Stabilization and Conservation Serv.*, 955 F.2d 1199, 1204–05 (8th Cir.1992) (apparent tension between *Bradley* and *Georgetown* not critical when Congress's intent as to retroactivity is discernible). Our task of discovering Congress's intent is made easier by the Supreme Court's analysis in *Bonjorno*, 494 U.S. at 838, 110 S.Ct. at 1577. There the Court resolved a retroactivity question by looking to the operative event on which the statute in question focused. The Court determined that that statute's operative event was entry of judgment. *Id.* The statute was therefore held to be intended to apply to those judgments entered on or after the effective date of the statute, but not to those entered before that date. *Id.* at 838–40, 110 S.Ct. at 1577–78.

◼ Looking at section 2044 through a *Bonjorno* lens, we find that the statute focuses on the disposal of bond funds deposited with the court, rather than on the conditions of their deposit. Section 2044 directs the court, on the government's motion, to *"order any money* belonging to and deposited by or on behalf of the defendant with the court for … a criminal appearance bond (trial or appeal) *to be held and paid over … to be applied"* to a convicted defendant's financial liabilities arising out of that conviction. *See* n. 2 *supra* (emphasis added) (text of 28 U.S.C. 2044). It also requires that the court *"not release"* any funds on deposit with it before the sentencing of a defendant, unless no assessment, fine, restitution or penalty can be assessed for the offense of conviction, or unless the defendant would otherwise suffer an undue hardship. *Id.* The statute focuses entirely on the disposal of bond funds held by the court, and relates not at all to their deposit. The release of funds, or requested release of funds, is therefore the operative event which triggers the application of this statute. Further, section 2044 uses the past tense, ex-

---

**3.** Section 2044 codifies the discretion courts have long exercised, to pay, on a proper motion, bond or bail money to the parties with a legally established superior claim to it. *See, e.g., United States v. Rubenstein*, 971 F.2d 288, 294 (9th Cir.1992); *Landau v. Vallen*, 895 F.2d 888, 892

(2d Cir.1990); *United States v. Cannistraro*, 871 F.2d 1210, 1212–13 (3d Cir.1989); *United States v. $250,000*, 808 F.2d 895, 901 (1st Cir.1987); *Jacobson v. Hahn*, 88 F.2d 433, 434–35 (2d Cir. 1937); Fed.R.Civ.P. 69(a).

pressly applying to funds already deposited with a court at the time it speaks. Congress's intent that the statute apply to all requests for release of bond funds held by the courts as of the effective date of the statute is thus discernible from an examination of the statutory language alone. This conclusion becomes even clearer when the statutory focus on the release of bond funds is considered in context with the judicial discretion, predating section 2044, to order bond funds to be paid to the superior claimant. *See* n. 3 *supra.*

Finally, we are not convinced that the district court applied section 2044 to Mr. Higgins. Both 28 U.S.C. §§ 2041 and 2042 provide adequate alternative bases for the district court's action and have been in effect since 1948. Section 2041 describes how and where money paid into the courts shall be deposited, and further notes that such deposits shall not impede the delivery of the moneys so deposited to the "rightful" owners. Section 2042 governs withdrawals of such money, and states that no money "shall be withdrawn *except by order of court.*" 28 U.S.C. § 2042 (emphasis added). Section 2042 further notes that even after a five year default period, claimants who can prove they are entitled to the money may obtain an order for its withdrawal. These statutes provide adequate authority for the court to consider and grant the government's motion as to Mr. Higgins' bond. Therefore, even if section 2044 applied only to bonds posted after its effective date, the outcome of this appeal would *not change.*

### B. The Eighth Amendment Argument

■ Since Mr. Higgins claims that section 2044 was indeed applied to him, we turn to his contention that section 2044 violates the Eighth Amendment's proscription against excessive bail.[4] Mr. Higgins bases his argument on Justice Douglas's clarification of a previous supervisory order to a district court directing it to grant an appellant bail during the Court's disposition of his petition for certiorari. *Cohen v. United States,* 82 S.Ct. 526, 7 L.Ed.2d 518 (1962).[5] The district court had complied with the prior order but had conditioned Cohen's appeal bond on his posting security for the payment of the "committed fine"[6] of which Cohen sought review. Justice Douglas found that the district court was using the bond to stay the execution of the "committed fine" under Federal Rule of Criminal Procedure 38, rather than to ensure the appearance of the defendant under Federal Rule of Criminal Procedure 46. The Justice found such use of the bond to be "excessive" under the Eighth Amendment, because this is not a purpose for which bail was intended. The other case on which Mr. Higgins relies involved a promise to pay any eventual fines as a condition of bail. *United States v. Rose,* 791 F.2d 1477, 1479 (11th Cir.1986). This condition was also held to violate the Eighth Amendment because it served a purpose other than securing the presence of the defendant. These cases, however, are inapposite as they deal with preconditions on bail which are intended to serve other purposes than to secure the presence of the defendant, not with post-conviction claims to bail.

Section 2044 does not precondition bail on the payment of any fine. It is a simple procedural mechanism by which the government, *after the purposes of bail have been served,* may make a motion as a judgment creditor that the court order the bond fund be delivered to it. Although garnishments of bail and the like have often been disallowed as interfering with the judicial process and harmful to the purposes of bail, *see, e.g., Bankers' Mortgage Co. v. McComb,* 60 F.2d 218, 221 (10th Cir.1932),

---

4. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

5. We note that Justice Douglas's supervisory order to the California District Court is not reported in the U.S. Reports, and therefore we question the status of this case. However, for the purposes of this litigation we assume without deciding that it is persuasive authority.

6. A "committed fine" amounts to a sentence of so many dollars of fine paid or so many days of incarceration served.

as we noted, courts have long had the discretion to order the disbursal of bond funds, after the defendant has appeared and the purpose of bail has been served, to those with superior claims on the funds. *See id.; United States v. Rubenstein,* 971 F.2d 288, 294 (9th Cir.1992); *Landau v. Vallen,* 895 F.2d 888, 892 (2nd Cir.1990); *United States v. Cannistraro,* 871 F.2d 1210, 1212–13 (3rd Cir.1989); *United States v. $250,000,* 808 F.2d 895, 901 (1st Cir.1987); Fed.R.Civ.P. 69(a). Section 2044 is merely a procedural variant of that post-appearance discretion, and therefore does not implicate the excessive bail clause of the Eighth Amendment.

### III. CONCLUSION

For the reasons stated above we affirm the district court's judgment in all respects, and affirm the district court's post-conviction order as to the disbursement of Mr. Higgins' appearance bond.