**UNITED STATES of America**

v.

**CANNISTRARO, Richard, Appellant.**

**No. 88–5662.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 25, 1989.

Decided April 6, 1989.

Bruce M. Merrill (argued), Fleming, Merrill & Roth, Newark, N.J., for appellant.

Samuel A. Alito, Jr., U.S. Atty., Richard J. Schechter (argued), Asst. U.S. Atty., Edna Ball Axelrod, Chief, Appeals Div., Newark, N.J., for appellee.

Before STAPLETON, MANSMANN and GARTH, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this securities fraud case we are presented with a novel issue: whether Local Rule 35C.1 of the District Court of New Jersey, which—in the event of a conviction and imposition of fines—acts as a lien on any cash deposited for bail until the government can levy a writ of execution on the money, violates the eighth amendment as excessive bail. In addition, the defendant challenges the amount of restitution he must pay, the length of his sentence as being disproportionate to those of others convicted of the same or similar crimes, and the district court's sentencing procedure pursuant to Fed.R.Crim.P. 32(c). We affirm the district court's denial of the return of bail monies but vacate the sen-

tence and remand to the district court for a determination of whether the lengths of sentence of other defendants for similar crimes may have been improperly considered.

## I.

On May 28, 1987 a federal grand jury issued a 9 count indictment charging Cannistraro with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 1); creating false nominee accounts in violation of 15 U.S.C. § 78j(b) and 18 U.S.C. § 2 (Counts 2–5); distributing false newsletters (Count 6); illegal transportation of stolen money in violation of 18 U.S.C. §§ 2314 and 2 (Count 7); mail fraud in violation of 18 U.S.C. §§ 1341 and 2 (Count 8); and with obstruction of justice, 18 U.S.C. § 1503 (Count 9).

Cannistraro was arrested in California and released after posting $75,000 in cash and a $50,000 bond. He returned to New Jersey where he entered a guilty plea to all nine counts on September 21, 1987. At the conclusion of a detention hearing on September 24, 1987, he was permitted to remain free on bail pending sentence. The bail was increased by $450,000. Cannistraro then posted $575,000 in bail consisting of municipal bonds and certificates of deposit. On November 2, 1987, Cannistraro was sentenced to a total of eight years in prison with five years probation, and was ordered to pay fines of $330,000 and restitution in the amount of $394,847 to a trustee appointed by the Securities and Exchange Commission.[1]

Cannistraro's counsel then requested that the district court cancel the bail recognizance. The Clerk's Office of the District of New Jersey informed counsel that pursuant to Local Rule 35C.1 of the General Rules of the District of New Jersey, the $75,000 cash posted could not be returned but was, in essence, "frozen" as a lien in favor of the government pending payment of the $330,000 fine.

---

1. The district court amended the restitution order to read $396,947 to correct an arithmetic

error. The $394,847 figure will be used for purposes of this opinion.

Subsequently, on November 20, 1987, the SEC petitioned the district court for an order freezing Cannistraro's assets which were posted for bail until a trustee could be appointed. On December 1, 1987, the district court signed the order providing that the assets would remain in the court's control until the appointment of a trustee. Counsel was furnished with a copy of the order on December 9, 1987.

In late February of 1988, the government requested that the court issue a writ of execution directing the United States Marshal in the District of New Jersey to satisfy the judgment against Cannistraro out of his personal property. The Marshal's office served the writ on the Clerk of Court in Trenton, effecting execution upon the monies and assets submitted to secure Cannistraro's appearance bonds.

The SEC approved the appointment of a trustee to manage Cannistraro's restitution fund. The district court signed the SEC's order on March 22, 1988.

Cannistraro moved for return of the assets and cash he posted for bail and also filed a motion to reduce or correct the sentence pursuant to Fed.R.Crim.P. 35. The government moved to direct the Clerk of Court to turn over all assets to the U.S. Marshal and for assets equal to $394,847 to be paid to the trustee of the restitution fund. The district court granted the government's motion for a turn-over order, denied Cannistraro's motion for the return of bail money and denied the Rule 35 motion. 694 F.Supp. 62. Cannistraro appeals.

Our review of matters alleging a violation of the eighth amendment is plenary since it involves a question of law. The review of a district court's denial of a Rule 35 motion is subject to an abuse of discretion standard. *United States v. Bickoff,* 531 F.2d 182 (3d Cir.1976).

## II.

■ Local Rule 35C.1 of the District of New Jersey provides that:

Where a defendant's bond is secured by depositing cash with the Clerk pursuant to subsection A of this Rule, the monies shall be refunded when the conditions of the bond have been performed, the defendant has been discharged from all obligations thereon, and the recognizance bond has been duly cancelled of record. If the sentence includes a fine or costs, however, any such fine or costs shall constitute a lien in favor of the United States on the amount deposited to secure the bond. No such lien shall attach when someone other than the defendant has deposited the cash and the refund is directed to someone other than the defendant.

Cannistraro argues that Local Rule 35C.1 violates the eighth amendment prohibition against excessive bail. In raising this argument, Cannistraro relies on *United States v. Rose,* 791 F.2d 1477 (11th Cir. 1986) in which the Court of Appeals for the Eleventh Circuit held that the addition of any condition on an appearance bond which provides that it shall be retained by the clerk to pay any subsequent fine upon a finding of guilt is violative of the eighth amendment prohibition against excessive bail because the condition was used for a purpose for which bail was not intended. 791 F.2d at 1480. In addition, the court found that the condition violated the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq. Id.*

Courts recognize that bail is designed to insure the defendant's appearance and submission to the judgment of the court. *United States v. Diaz,* 811 F.2d 1412 (11th Cir.1987); *United States v. Rose,* 791 F.2d 1477 (11th Cir.1986); *United States v. Powell,* 639 F.2d 224 (5th Cir.1981); and, *United States v. Kirkman,* 426 F.2d 747 (4th Cir.1970). Statutory authority for the setting of bail is found at 18 U.S.C. § 3141 *et seq.* and Fed.R.Crim.P. 46. Once the conditions of bail have been met, *i.e.,* the defendant presents himself for trial, whether or not he is found guilty, Rule 46(f) of the Federal Rules of Criminal Procedure provides for the exoneration of bail. Specifically Rule 46(f) states:

When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the obligors and release any bail.

Here, Cannistraro argues, Local Rule 35C.1 permits the government to have a lien on the monies posted for bail if the defendant is convicted and a fine is imposed. This results in bail being used for a purpose for which it is not intended. Under the doctrine enunciated by the Eleventh Circuit in *United States v. Rose*, Cannistraro argues, the New Jersey local rule amounts to a violation of the eighth amendment.

The government argues that if the bail is exonerated and the money is released, there is no guarantee that Cannistraro will not dissipate the funds between the time of bail exoneration and the time collection measures could be successfully completed. Under Fed.R.Civ.P. 69(a), the government can request a writ of execution pursuant to applicable New Jersey collection laws and attach the money posted as bail. There is no dispute that under both statutory and case law the government can attach Cannistraro's property in order to satisfy the payment of fines.

What is at dispute, however, is the effect of Local Rule 35C.1 which Cannistraro contends acts to add a condition to bail, other than the purpose of assuring the defendant's presence before the court, in order to "freeze" the assets so they can be attached. This is a case of first impression on this particular issue.

We conclude that the decision in *United States v. Rose* is factually distinguishable. In *Rose*, the defendant assigned his right to the cash deposit to his attorney prior to the commencement of trial. Consequently, at "the time the trial was over, Rose had no

funds in the custody of the Court" upon which the government could levy. *Rose*, 791 F.2d at 1480. Here, the money posted by Cannistraro was his own and had not been assigned to a third party.[2] Furthermore, nothing in Cannistraro's bail bonds required him to pay any fine or to make restitution. In that regard, we note the difference between the language of Cannistraro's bond and the following language which appeared in Rose's bail bond form: "the defendant Joseph Rose shall abide the final judgment and pay the fine imposed upon affirmance of the sentence of the appellate court." 791 F.2d at 1479. No such requirement is found in Cannistraro's bond form.

Finally, the New Jersey local rule does not permit the Clerk of Court to apply the bail money directly to the fine. Rather, the fine acts as a "lien" or freezes the money until the government can obtain a writ of execution of the judgment. Thus, the government is required to follow the procedural steps necessary to execute the judgment while the funds are frozen to avoid dissipation.

We conclude that the procedure imposed by New Jersey Local Rule 35C.1 does not amount to an additional condition resulting in violation of the eighth amendment, but rather, is a temporary procedural shortcut which allows the government to avoid having to move for a freeze order while proceeding in its efforts to obtain a writ of execution.[3]

III.

Cannistraro's motion pursuant to Rule 35 requested a correction or reduction of sen-

---

**2.** The government acknowledges that if the cash posted for Cannistraro's bail belonged to a third party the cash would be released. Indeed, Local Rule 35C.1 is inapplicable when "the refund is directed to someone other than the defendant."

**3.** Cannistraro raised the additional argument before the district court that the shortcut violated his due process rights. The district court concluded that Local Rule 35C.1 did not violate the due process guarantees by imposing a lien in favor of the government. As the district court stated: "in fact the Local Rule's imposition of a lien only repeats what is mandated by statute":

'A fine imposed ... is a lien in favor of the United States upon all property belonging to the person fined. The lien arises at the time of the entry of the judgment and continues until liability is satisfied, remitted, or set aside, or until it becomes unenforceable.' 18 U.S.C. § 3613(a) (Supp. IV 1986) (Effective November 1, 1987).

*United States v. Cannistraro*, 694 F.Supp. 62, 75 (D.N.J.1988). The previous provision at 18 U.S.C. § 3565(a)(2) was similarly worded, thus eliminating an *ex post facto* challenge. *Cannistraro*, 674 F.Supp. at 74–75 n. 14. Cannistraro does not raise the due process issue before us.

tence as well as a hearing to determine his ability to pay restitution and to dispose of controverted facts in the presentence investigation report ("PSR"), such as clarifying the amount he allegedly profited from the fraud.

A) Restitution

█ In *United States v. Pollak*, 844 F.2d 145 (3d Cir.1988), we held that the district court must make adequate findings of the defendant's ability to pay restitution. A conclusory finding is not sufficient; a district court must make specific factual findings before imposing restitution. *Pollak*, 844 F.2d at 155.

Section 3664 of Title 18 U.S.C. requires the district court to "consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C.A. § 3664(a) (West Supp. 1988). The attorney for the government has the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by the victim. The defendant has the burden of demonstrating, by a preponderance of the evidence, his financial means and resources. *United States v. Palma*, 760 F.2d 475 (3d Cir.1985). The record does not disclose that Cannistraro proffered any evidence establishing his ability to pay, the needs of any dependents, or any other financial obligations with which he might be burdened.

The amount of restitution imposed by the district court was calculated in the following manner:

Now, with regard to the restitution, using the numbers taken from your (trial) attorney's report, as I've discussed them with your attorney, I find that the M and I Fund suffered a loss of $134,375. The Bullock funds (sic) suffered a loss of $25,000 and that the conspirators, your co-conspirators, enjoyed a gain of $247,-572. That total is $394,847, which is the amount of the restitution that will be imposed.

Cannistraro now argues that he is entitled to a hearing to determine the amount of restitution. He contends that a hearing is necessary to determine who were the actual victims of the fraud; the amount of the victims' losses; and, whether he could pay the amount of restitution imposed. We note that the figures used by the district court to assess the appropriate amount of restitution were taken from the defendant's presentence submission and the admission of his counsel that he had between $500,000 and $600,000 in assets. In addition, while making the determination regarding restitution, the district court asked defense counsel if he agreed with the court's analysis. No objection was raised; instead, counsel stated: "I accept that, your Honor." The district court based its decision of Cannistraro's ability to pay on the fact that Cannistraro "had deposited with the court monies and assets worth over $500,000." 694 F.Supp. at 85. This conclusion is supported by the evidence on the record and, thus, we cannot say that the district court abused its discretion.

By failing to contest the underlying factors used by the district court imposing the order of restitution, Cannistraro has waived his right to contest this order. *See United States v. Kail*, 804 F.2d 441, 449–50 (8th Cir.1986) (where defendant failed to contest method to calculate restitution at sentencing, the sentencing court's reliance on amounts set forth in presentencing report was not unreasonable and did not constitute a violation of due process). Recognizing that Cannistraro acknowledged prior to sentencing that restitution could be imposed, his admission to possessing assets in excess of half a million dollars, and his concession that the district court's calculation of restitution was accurate, we conclude that Cannistraro's challenge to the district court's order of restitution is without merit. Consequently, we affirm the district court's order of restitution.

B) The Presentence Report

█ It is settled law that defendants, whether tried by a jury or having entered a guilty plea, have a right to be sentenced on

the basis of accurate and reliable information. *See United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), *and United States v. Baylin,* 696 F.2d 1030 (3d Cir.1982). Fed.R.Crim.P. 32(c)(3)(D) provides that if the defendant or his counsel allege a factual inaccuracy in the presentence report, the district court must "make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing."

Cannistraro challenges an alleged factual inaccuracy in the presentence report. Before the district court, he took the following exceptions: "the fraud of which Mr. Cannistraro is guilty is, at most, $250,000, as set forth in the indictment. The S.E.C. civil complaint does *not* allege that Mr. Cannistraro had anything to do with the $3 million in the Cayman Islands and does *not* seek restitution from Mr. Cannistraro." *See* 694 F.Supp. at 82. As earlier noted, Cannistraro's counsel subsequently conceded, albeit for purposes of restitution, that the amount of Cannistraro's fraud was $400,000. Cannistraro then requested that the district court strike references in the presentence report to a 3.5 million dollar figure. The district court denied the request.

Cannistraro now argues that by denying his request, a controverted fact was created as to the amount. Under Rule 32(c), the district court must either make a finding resolving the controversy or state for the record that the controverted fact was not considered in the imposition of the sentence. Here, the district judge explicitly stated that he did not rely upon any of these controverted facts in imposing Cannistraro's sentence. *Cannistraro,* 694 F.Supp. at 83.

Cannistraro's major concern with the figures used with respect to the size of the fraud committed pertains to his eligibility for parole. For example, under parole guidelines, if the Board uses the $3.5 million figure, Cannistraro will not be eligible

for parole before 40–52 months have been served. On the other hand, if the $400,000 figure is used (the figure provided by Cannistraro in his sentencing memorandum and employed by the district court in determining restitution), he will be eligible within 24–36 months. However, as noted, the district court clearly stated that it did not rely on any particular figure in imposing sentence on Cannistraro. It stated:

> It's not necessary for me to make a decision this morning as to whether it was three and a half million or whether it was 400,000. The fact of the matter is that the potential was enormous and the potential was there because you made it.

(A. 288). Moreover, the district court stated that it structured its sentence because Cannistraro "took money out of the pockets of the very people who could not afford it, the small investor...." *Id.*

We conclude that the district court's statement that it did not rely on the controverted facts when sentencing Cannistraro is sufficient for the purposes of Fed.R. Crim.P. 32(c)(3)(D)(ii). Cannistraro's concerns about the controverted facts can be satisfied by Cannistraro requesting that the district court's statements be attached to the presentence report to inform the parole board that the district court did not rely on the controverted facts when imposing sentence.

### C) Disproportionate Sentence

█ Cannistraro's final argument is that the eight year sentence he received is so disproportionate to the crime and to sentences imposed on similar defendants as to be excessive.[4] In so arguing he relies on *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), which had repeated the common-law maxim that the punishment should be proportionate to the crime. In *Solem,* the Supreme Court held that a defendant's sentence of life imprisonment for passing a bad check was so disproportionate as to violate the eighth amendment. The Court suggested several steps to test proportionality. First, we

---

4. Because the offense was committed prior to November 1, 1987, the Sentencing Guidelines, 18 U.S.C.A. § 3551 *et seq.* (West 1988 Supp.), do not apply.

must consider the seriousness of the crime compared to other crimes and the severity of the penalty. Second, we compare the sentences of other defendants in the same jurisdiction. Third, we compare the sentences of defendants for the same crime in other jurisdictions. *Solem*, 463 U.S. at 291–92, 103 S.Ct. at 3010–11.

We note that while Cannistraro's argument is appealing, it relies too heavily on the last two factors of *Solem* and fails to take into consideration several factors beyond the length of the sentence itself. First, Cannistraro did not cooperate with the government. In fact, the district court found that he had obstructed justice by trying to persuade a witness to conceal evidence from the grand jury. Second, Cannistraro cannot show that his sentence is excessive as being beyond the statutory maximum because it is actually less than what he could have received. Under the circumstances, it cannot be said that the district court abused its discretion by imposing the eight year sentence.

Nevertheless, we are also aware that every defendant has a right to be sentenced on accurate and reliable information. *Baylin*, 696 F.2d at 1039. Attached to the presentence report was a table of general statistics prepared by the probation office. This table showed sentences imposed upon persons convicted of fraud both nationwide and in New Jersey. The district court employed these statistics in supporting its conclusion that Cannistraro's sentence was not disproportionate. 694 F.Supp. at 80. The presentence report indicates that the table was derived from information obtained from the Statistical Analysis and Reports Division of the Administrative Office of the United States Courts ("Administrative Office") for the year 1986. Cannistraro argues that the district court erroneously concluded that the lengths of time listed on the chart for other defendants' sentences was *actual* time served prior to parole rather than the length of sentence *imposed.*

The 1986 Annual Report of the Director of the Administrative Office, of which we take judicial notice, contains charts nearly identical to the one found in the presentence report. We read these charts as documenting the sentences imposed by the district courts, and not as documenting the actual time served by defendants. Prior to argument Cannistraro sought to supplement the records with his correspondence with the Administrative Office. That correspondence reveals that the statistics found in Cannistraro's presentence report reflected sentences imposed and not actual time served. We originally denied this motion on the ground that we should not consider materials not before the district court.

Upon hearing Cannistraro's argument, however, and considering the charts contained in the Administrative Office's Reports, we believe the just course of action is to vacate our order denying Cannistraro's motion and permit Cannistraro to supplement the record. Since this correspondence was not before the district court at the time of Cannistraro's sentencing, and because we cannot tell whether at the time of sentencing the district court relied upon, and if it did, how it interpreted the statistical data found in the presentence report in the same manner as it interpreted the data in its Rule 35 opinion,[5] we believe it is prudent to vacate the sentence imposed against Cannistraro and remand to the dis-

---

5. In the district court judge's Rule 35 opinion, he interpreted the sentencing statistics found in the presentence report as pertaining to actual time *served* rather than sentence *imposed.* The opinion, in relevant part reads:

Cannistraro appears to be suggesting that his sentence is disproportionate because his term sentence is higher than the average time actually served by securities fraud defendants nationally and in New Jersey. The general statistics reflect the average prison time actually served by securities fraud defendants. It is likely that these defendants received higher term sentences, but were released on parole before serving the complete term. Also the statistics indicate the average time served; thus, it is likely some defendants served shorter periods of incarceration and it is likely that some defendants served longer periods of incarceration.

694 F.Supp. at 80.

trict court for the district court to resentence in light of the supplemented record.[6]

If the district court determines that it did not rely upon the table contained in the presentence report which sets forth sentences given to other fraud defendants, the original sentence may, in the district court's discretion, be reinstated. On the other hand, if the district court did rely upon the data, and misinterpreted its meaning, the district court should resentence Cannistraro in accordance with a correct understanding of the presentence report table.

### IV.

Having considered all the contentions raised by the defendant, we will affirm the district court's order of restitution but will vacate the sentence of imprisonment and remand to the district court for resentencing consistent with this opinion.

---

6. We see no difficulty with remanding to the same district judge for resentencing. In *Baylin*, 696 F.2d at 1043, n. 30, we recognized that it is the practice of the district courts in this circuit to assign a case on remand to the judge who originally heard it. Occasionally we may use our supervisory power to reassign cases on remand, *e.g. Johnson v. Trueblood*, 629 F.2d 302 (3d Cir.1980), *cert. denied*, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981) *and Lewis v. Curtis*, 671 F.2d 779 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982) (where justice requires reassignment to preserve appearance of impartiality). Cannistraro has failed to show a substantial reason, other than dislike of the sentence imposed, which would require us to reassign the case on remand.