955 So.2d 43 (2007)
ESTATE OF Clara B. JONES, etc., Appellant,
v.
MARINER HEALTH CARE OF DELAND, INC., et al., Appellees.
No. 5D05-1214.
District Court of Appeal of Florida, Fifth District.
March 16, 2007.
Rehearing Denied April 27, 2007.
*44 Susan B. Morrison, of Law Office of Susan B. Morrison, P.A. and Brian L. Thompson, John R. Cummings and Blair N. Mendes of Wilkes & McHugh, P.A., Tampa, for Appellant.
Michael R. D'Lugo and Richards H. Ford, of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Orlando, for Appellee Mariner Health Care of DeLand.
No Appearance for other Appellees.
SAWAYA, J.
We review a final judgment and attendant order denying a motion for new trial emanating from an action filed by a nursing home patient, Clara B. Jones, alleging common law negligence and violations of the Nursing Home Residents' Act, which is a fitting sobriquet recently coined by the judiciary to specifically reference sections 400.22 and 400.23, Florida Statutes.[1] Jones also claimed entitlement to punitive damages. The Estate of Clara B. Jones, which was substituted for Jones upon her *45 death, contends that the final judgment rendered in favor of the defendants is erroneous and that a new trial is warranted because the trial court improperly limited the claims under the Act to violations that occurred after May 15, 2001.
The defendants in the underlying action, the appellees here, are: Mariner Health Care of Deland, Inc., which is the licensee of the nursing home facility where Jones resided from October 14, 1998, to June 30, 2001; Mariner Post Acute Networks, Inc. [MPAN], which is its corporate parent; Mariner Health Group, Inc. [MHG], a corporate entity that had previously merged with another corporation to form MPAN; and Merle Zinick, the administrator of the nursing home facility. For ease of reference, these defendants will be collectively referred to as "Mariner." Mariner argues that no error occurred, but if it did, it was harmless. We affirm in part and reverse in part.[2]

Factual and Procedural Background
To resolve the issue before us, it is not necessary to parade the list of horribles alleged to have occurred to Jones while she was a resident of Mariner. It is enough for us to discuss the procedural background and chronicle certain incidents of alleged abuse and violations of the Act when necessary to determine whether error occurred and, if so, whether a new trial is warranted.
We begin with Jones' 1998 entry into the nursing home at the age of 86 for rehabilitation after hip surgery. At that time, she had a very large stage IV decubitus ulcer, was suffering from dementia, and needed assistance with her daily activities. Among other things, Jones had limited mobility and needed assistance with toileting. Further, she constantly cried throughout her stay and was unable to communicate. Despite her infirmities, she was expected to rehabilitate.
In January 1999, Jones suffered a fecal impaction for which she was successfully treated. She remained relatively healthy until June 2001, when the incident giving rise to this suit occurred. On June 15, 2001, she suffered a brown, watery emesis. No doctor was contacted because the staff felt it was an isolated incident. In fact, nothing happened again until June 30, 2001, when Jones again suffered another brown emesis. She had been eating well and having bowel movements.
The emesis was tested for the presence of blood, and the results were positive. Dr. Alstott was called, and he instructed that Jones needed to go to the hospital immediately. Upon arrival at the hospital, Dr. Capulong was called in for a consult. He noted contractures in her hips and knees just prior to performing a colostomy. He discovered that Jones had a perforated rectum and a massive fecal impaction the size of a football. Jones recovered well from the surgery and was released on July 10, 2001. She then changed nursing home facilities and resided at University Center East for another year and a half before her death on January 26, 2003.
Prior to her death, Jones filed suit against Mariner, through her daughter as guardian, claiming common law negligence and violation of her rights under the Act. She claimed that the nursing home (and vicariously MHG and MPAN) failed to provide adequate and appropriate health care, resulting in contractures and a fecal impaction requiring surgery. Unfortunately, Jones died before trial, and it therefore became necessary for the personal *46 representative to continue the lawsuit.
Shortly before the trial commenced, the Florida Supreme Court issued its opinion in Knowles v. Beverly Enterprises-Florida, Inc., 898 So.2d 1 (Fla.2004), which held that a personal representative could not bring a claim under the 1997 version of section 400.023(1) when the alleged violation did not cause the resident's death. Based on this ruling, Mariner moved to strike all of the claims under the Act, arguing that the personal representative was proceeding against Mariner for alleged violations that were admittedly not causally related to Jones' death. The trial court struggled with its decision but ultimately ruled that Knowles applied and that the claims under the Act would be limited to the allegations that occurred after May 15, 2001. This date became a component of the trial court's ruling because the Legislature amended section 400.023(1), effective on that date, to eliminate death as a causal factor when a personal representative brings a claim under the Act.[3] Because Jones entered the hospital on June 30, 2001, and did not return to Mariner, the trial court's ruling, in essence, restricted the Estate's claim under this statute to the last 45 days of Jones' residency at the nursing home. Further, the negligence claims were restricted to the time period between October 14, 1998, and May 15, 2001.
The case proceeded to trial and was presented to the jury in that posture. The trial court directed a verdict for MHG and Merle Zinick, and the jury returned a verdict finding that the other two defendants were not liable. The trial court denied the Estate's motion for new trial and the Estate appealed.

Statutory Analysis
In order to determine whether the trial court erred in limiting the Estate's claims under the Act to infringements that occurred after May 15, 2001, we must examine the pertinent statutory provisions. The question thus becomes a matter of statutory interpretation requiring application of the de novo standard of review. See Velez v. Miami-Dade County Police Dep't, 934 So.2d 1162, 1164 (Fla.2006); Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006) ("The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review.").
The textual point marked for emphasis by the parties upon which we focus our attention is the part of the Act found in section 400.023(1) that states:
Any resident whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any licensee responsible for the violation. The action may be brought by the resident or his or her guardian, by a person or organization acting on behalf of a resident with the consent of the resident or his or her guardian, or by the personal representative of the estate of a deceased resident when the cause of death resulted from the deprivation or infringement of the decedent's rights.
§ 400.023(1), Fla. Stat. (1997) (emphasis added).
*47 While the emboldened provision of the statute is clear and unambiguous, there was some debate as to whether its plain meaning was what the Legislature actually intended. The Florida Supreme Court addressed this issue in Knowles and concluded that the language of the statute is clear that "a personal representative of the estate of a deceased resident may bring a cause of action against a nursing home only when the death of the resident resulted from the deprivation or infringement of the decedent's rights." Knowles, 898 So.2d at 6. What is clear from even a casual reading of the decision in Knowles, besides, of course, its interpretation of section 400.023(1), is that if the supreme court had the power to rewrite the statute with sensible design, it would have done so in a way that deleted the requirement that a personal representative can bring suit only if he or she shows that the alleged statutory violation caused the patient's death, much as the Legislature did when it amended the statute in 2001. But just as the supreme court could not rewrite the statute to delete that which the Legislature specifically and clearly included, the courts cannot rewrite the statute by inserting that which the Legislature did not include. We believe the trial court violated the latter prohibition by interpreting the statute, via the Knowles decision, to mean that a personal representative could neither bring nor maintain an action filed by the nursing resident prior to death unless the death was caused by a statutory violation.
The supreme court in Knowles explained that "because this is a legislatively created cause of action to be brought by personal representatives only under certain circumstances, we conclude the Legislature had the authority both to determine the extent of the statutory right and to prescribe or limit the remedies available for a violation of the right." Id. at 9. The manner in which the Legislature did that was to prohibit a personal representative from bringing a suit unless death was a causal factor. Nowhere does the Legislature state or express its intention that a personal representative be prohibited from maintaining a suit previously filed by the patient or guardian of a patient who dies during the pendency of the litigation. Unlike the trial court, we do not consider the terms "bring" and "maintain" to be synonymous within this statutory context of section 400.023(1). "Bring" generally means to cause to exist or occur, while "maintain" means to sustain or continue. Merriam Webster's Collegiate Dictionary 143, 702 (10th ed. 1997). Judicial insertion of the provision "maintain an action" into the structure of the statute constitutes error on the part of the trial court, just as the Estate contends.
We are not persuaded to the contrary by the cases that have dealt with section 400.023 and a personal representative's ability to bring suit prior to the statutory change, primarily because the factual scenarios that were presented to the courts in those cases are not similar or analogous to the facts in the instant case. See Knowles; Tampa Med. Assocs., Inc. v. Estate of Craig, 915 So.2d 660 (Fla. 2d DCA 2005); Estate of Doyle v. Mariner Healthcare of Nashville, Inc., 889 So.2d 829 (Fla. 2d DCA 2004); Estate of Vazquez v. Avante Groups, Inc., 880 So.2d 723 (Fla. 5th DCA 2004); Estate of Youngblood v. Halifax Convalescent Ctr., Ltd., 874 So.2d 596 (Fla. 5th DCA 2004) (originally filed by guardian of the resident, but in the interim the resident died and the appellee was not added as a defendant until after her death thereby making it a personal representative who filed suit); Greenfield v. Manor Care, Inc., 705 So.2d 926 (Fla. 4th DCA 1997), review denied, 717 So.2d 534 (Fla. 1998). Those decisions have only dealt *48 with the issue in the context of the personal representative bringing suit. Here, the resident's guardian filed suit on behalf of Jones while she lived and, therefore, the guardian was not required to show that the alleged violations or deprivations caused Jones to die. Once Jones died, the personal representative maintained the lawsuit. Because the personal representative did not initiate the lawsuit, the requirement placed upon personal representatives to show a statutory violation as the cause of death does not apply.

Harmless Error Analysis
Mariner, citing this court's decision in Vazquez, argues that even if error did occur in limiting the claim under the Act, the error is harmless. In Vazquez, the issue on appeal was whether the jury instruction regarding the claim under the Act was proper. Vazquez, 880 So.2d at 724. In addressing that issue, this court explained on rehearing that it found the jury instruction to be erroneous, but harmless, because the jury's verdict on the negligence claim that was in favor of the nursing home was sustainable. "Close examination of the estate's complaint reveals that the allegations asserting a violation of Chapter 400 virtually track those contained in the unsuccessful negligence count." Id. at 726. The same is not true in the instant case because the claims under the Act and the negligence claim are not identical. Mariner also concedes that the jury instructions were different and the proof offered was not identical. Therefore, Vazquez is distinguishable from the instant case.
We also note that the Act is remedial; it was enacted to provide nursing home residents "`a mode of remedy for a wrong, where [they] had none, or a different one, before.'" Lacey v. Healthcare & Ret. Corp. of Am., 918 So.2d 333, 334 (Fla. 4th DCA 2005) (quoting Fonte v. AT & T Wireless Servs., Inc., 903 So.2d 1019, 1024 (Fla. 4th DCA 2005)); Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296 (Fla. 4th DCA), review denied, 917 So.2d 195 (Fla.2005).[4] Because the Act is intended to provide a remedy where none existed or to change a remedy previously provided, it is not enough to show harmless error to simply assert that the injured or deceased resident also unsuccessfully pursued a common law negligence action, especially when, as here, the allegations are not the same, the evidence is not the same, and the jury instructions are different.[5]

*49 Conclusion

We conclude that limiting the Estate's claims under the Act as the trial court did constitutes error. We disagree with the argument presented by Mariner that this error is harmless. Accordingly, we reverse the directed verdict and judgment rendered in favor of Mariner and remand this case for a new trial on the claims under the Act.

Certified Question
Mariner suggests, and we think appropriately so, that the issue we have resolved should be certified to the Florida Supreme Court given the large number of pending claims based on the version of section 400.023(1) in effect prior to its amendment in 2001. Therefore, we certify the following question to the Florida Supreme Court as a matter of great public importance:
DOES THE VERSION OF SECTION 400.023(1), FLORIDA STATUTES, IN EFFECT PRIOR TO ITS AMENDMENT IN 2001 PROHIBIT A PERSONAL REPRESENTATIVE FROM MAINTAINING A CLAIM WHEN THE ALLEGED VIOLATION DID NOT CAUSE THE RESIDENT'S DEATH AND WHEN THE SUIT WAS ORIGINALLY FILED BY THE RESIDENT PRIOR TO HIS OR HER DEATH?
AFFIRMED IN PART; REVERSED IN PART; REMANDED; AND QUESTION CERTIFIED.
PLEUS, C.J., and MONACO, J., concur.
NOTES
[1] See SA-PG-Ocala, LLC v. Stokes, 935 So.2d 1242 (Fla. 5th DCA 2006); Blankfeld v. Richmond Health Care, Inc., 902 So.2d 296 (Fla. 4th DCA), review denied, 917 So.2d 195 (Fla. 2005).
[2] We affirm the judgment as to the common law negligence count. Based on our resolution of the issue we address in this opinion, the other issues relating to the cause of action under the Act are rendered moot.
[3] The statute was amended effective May 15, 2001, to allow a personal representative to bring suit regardless of the cause of death:

Any resident whose rights as specified in this part are violated shall have a cause of action. The action may be brought by the resident or his or her guardian, by a person or organization acting on behalf of a resident with the consent of the resident or his or her guardian, or by the personal representative of the estate of a deceased resident regardless of the cause of death.
§ 400.023(1), Fla. Stat. (2001).
[4] The court in Blankfeld explained:

A remedial statute is one which confers or changes a remedy. Campus Communs., Inc. v. Earnhardt, 821 So.2d 388 (Fla. 5th DCA 2002). The Nursing Home Resident's Act is remedial. Knowles v. Beverly Enterprises-Florida, Inc., 898 So.2d 1 (Fla.2004). The "Residents Rights" provisions in section 400.022 were enacted in 1980 to respond to a Dade County Grand Jury investigation of nursing homes which revealed detailed evidence of substantial elder abuse occurring in nursing homes. See Romano v. Manor Care, 861 So.2d 59, 62-63 (Fla. 4th DCA 2003); Crotts & Martinez, The Nursing Home Residents' Rights Act-A Good Idea Gone Bad!, 26 STETSON L. REV. 599 (1996). In 1993, the Legislature amended the statute by enacting section 400.023 ("Civil Enforcement"), providing civil remedies for nursing home residents for violation of the statute. § 400.023(1), Fla. Stat. (2001). A cause of action "may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any violation of the rights of a resident or for negligence." Id.
Blankfeld, 902 So.2d at 298.
[5] Not only are the jury instructions different in terms of the elements for each claim, but also, the instructions divided the two claims into separate time frames: the jury was instructed to determine whether there was negligence on the part of Mariner between October 14, 1998, and May 15, 2001, and whether there was a deprivation or infringement of Jones' resident rights on the part of Mariner between May 15, 2001, and June 30, 2001. Obvious concern on the part of the trial judge that the jury would be confused prompted him to tell the jurors, "Now, the reason that there are two different time periods is there has been a change in the law, in the statutes, so don't be confused." Our concern is that it may have been difficult for the jury to comply with this directive.