SAWAYA, J.
 

 This case involves application of section 903.286, Florida Statutes (2007), which provides in pertinent part that the clerk of court is to withhold from the return of a cash bond posted on behalf of a criminal defendant by a person other than a licensed bail bondsman “any unpaid court fees, court costs, and criminal penalties.” The issues we must resolve are whether section 903.286 is constitutional and, if so, whether the statute should be interpreted to mean sums owed only in the particular case for which bond was posted or whether it encompasses all of a defendant’s cases. These issues come to us via the following certified question posed by the County Court: “Is Florida Statute 903.286 constitutional and if so [what] is the statutory interpretation as to the definition of ‘any costs and fees.’ ” We restate the questions as follows to more accurately reflect the specific issues raised:
 

 Does section 903.286 violate the constitutional provisions relating to due process, equal protection, excessive bail, eminent domain, or the single subject rule?
 

 Does section 903.286 apply to any unpaid fees, court costs, and criminal penalties in all of the defendant’s criminal cases?
 

 Resolution of these issues does not require a detailed discussion of the underlying facts of the crime the defendant, Jack Hunter, was convicted of committing. Suffice it to say that after Hunter was charged with driving under the influence of alcohol, another individual, Bernard Simpkins, who was previously Hunter’s father-in-law, posted a cash bond in the amount of $5,000 to secure Hunter’s release from jail. The bond form Simpkins signed specifically provided:
 

 1) Section 903.286, Florida Statutes, requires the Clerk of the Court shall withhold from the return of a cash
 
 *377
 
 bond posted on behalf of a criminal defendant by a person other than a bail bond agent licensed pursuant to chapter 648 sufficient funds to pay any unpaid court fees, court costs and criminal penalties.
 

 2) A refund will only be made if the cash bond is more than what is owed on ALL of the defendant’s cases.
 

 Specifically referenced in the bond is section 903.286, Florida Statutes, which provides:
 

 Notwithstanding the provisions of s. 903.31(2), the clerk of the court shall withhold from the return of a cash bond posted on behalf of a criminal defendant by a person other than a bail bond agent licensed pursuant to chapter 648 sufficient funds to pay any unpaid court fees, court costs, and criminal penalties. In the event that sufficient funds are not available to pay all unpaid court fees, court costs, and criminal penalties, the clerk of the court shall immediately obtain payment from the defendant or enroll the defendant in a payment plan pursuant to s. 28.246.
 

 § 903.286, Fla. Stat. (2007). The statute was enacted effective July 1, 2005.
 
 [1]
 

 Hunter subsequently entered a plea to the DUI charge, and as part of his sentence the trial court assessed a total of $1,063.88 in fines, court costs, and fees. At the time of this assessment, Hunter had outstanding unpaid fines, costs, and criminal penalties in three other criminal cases totaling $3,936.12.
 
 [2]
 
 Accordingly, the Clerk of Court deducted that sum, along with the $1,063.88 assessed in the instant DUI case, from the cash bond. After all the deductions, there was nothing to remit to Simp-kins.
 

 Simpkins filed a motion protesting the Clerk’s refusal to return the cash appearance bond and requesting that the Clerk of Court be required to show cause why the bond should not be returned. A hearing was held, and the trial court concluded that section 903.286 is constitutional. The court further held that it only applies to costs, fees, and penalties associated with the case in which the bond was posted to assure the appearance of the defendant. Accordingly, the trial court ordered the Clerk to return to Simpkins any money deducted from the cash bond for unpaid costs, fees, or penalties not directly attributable to the specific case number for which Simpkins had posted the bond and
 
 *378
 
 certified to us the question previously quoted as a matter of great public importance.
 

 The Clerk of Court appealed the final judgment, and this court accepted jurisdiction pursuant to Florida Rule of Appellate Procedure 9.160 to answer the certified question posed therein. Because the issues reflected in the rephrased certified questions present purely legal questions that we must resolve, the appropriate standard of review is de novo.
 
 See Kephart v. Hadi,
 
 932 So.2d 1086, 1089 (Fla.2006) (“The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review.”);
 
 Jones v. Mariner Health Care of Deland, Inc.,
 
 955 So.2d 43, 46 (Fla. 5th DCA 2007) (matters of statutory interpretation require application of the de novo standard of review);
 
 Dep’t of Ins. v. Keys Title & Abstract Co.,
 
 741 So.2d 599, 601 (Fla. 1st DCA 1999) (“A trial court decision on the constitutionality of a statute is reviewed by the
 
 de novo
 
 standard, because it presents a pure issue of law. The appellate court is not required to defer to the judgment of the trial court. Although trial court decisions are presumed to be correct, there is also a presumption in the law that a statute is constitutionally valid.”).
 

 The Constitutional Challenges
 

 The trial court considered several constitutional challenges to section 903.286 and rejected each. The trial court held that the statute did not violate the Due Process and Equal Protection Clauses of the Florida and Federal Constitutions, and further held that it does not allow an unlawful taking of property without just compensation. Simpkins raises other constitutional arguments, contending that the statute violates the single subject rule and allows for excessive bail. The first three constitutional challenges to section 903.286 were previously considered by this court and rejected in
 
 Biddle v. Ellis,
 
 976 So.2d 103 (Fla. 5th DCA),
 
 review denied,
 
 987 So.2d 79 (Fla.2008).
 
 [3]
 
 Nevertheless, we will briefly discuss the constitutional challenges rejected by this court in
 
 Biddle
 
 and proceed to our discussion of the others. First, a brief discussion of some very general principles that will guide our analysis is in order.
 

 Our analysis begins with a strong presumption in favor of the validity of legislative enactments. Statutes “should be held constitutional if there is any reasonable theory to that end.”
 
 Bonvento v. Bd. of Pub. Instruction,
 
 194 So.2d 605, 606 (Fla.1967);
 
 see also Sunset Harbour Condo. Ass’n v. Robbins,
 
 914 So.2d 925 (Fla.
 
 *379
 
 2005). The “unconstitutionality must appear beyond all reasonable doubt before [a statute] is condemned.”
 
 Bonvento,
 
 194 So.2d at 606. In addition, courts will not declare a statute unconstitutional where the statute is capable of being construed in a constitutional manner.
 
 Sunset Harbour, Indus. Fire & Cas. Ins. Co. v. Kwechin,
 
 447 So.2d 1337, 1339 (Fla.1983). Accordingly, a party “ ‘who challenges the constitutional validity of a statute bears a heavy burden of establishing its invalidity.’ ”
 
 Dickerson v. State,
 
 783 So.2d 1144, 1146 (Fla. 5th DCA 2001) (quoting
 
 Wright v. State,
 
 739 So.2d 1230, 1231 (Fla. 1st DCA 1999)).
 

 Due Process
 

 The basic due process guarantee of the Florida and Federal Constitutions is that “no person shall be deprived of life, liberty or property without due process of law.” U.S. Const. amend. XIV; Fla. Const. art. I, § 9. Fundamental to the concept of procedural due process is reasonable notice and opportunity to be heard.
 
 See, e.g., Dep’t of Law Enforcement v. Real Property,
 
 588 So.2d 957, 960 (Fla.1991) (due process contemplates fair notice and a real opportunity to be heard).
 

 The due process challenge Simpkins raised is based on the argument that he did not receive notice that the bond money would be used to pay all of Hunter’s outstanding obligations, nor did he have an opportunity to be heard and challenge the withholding of the return of the cash bail. We believe that this argument has very little merit. The record clearly shows that Simpkins was expressly notified of the provisions of section 903.286 in the bond form he signed. Moreover, the trial court, in rejecting this argument, also found that “[n]otice has been posted at the Brevard County Jail to advise arrested persons and their families about this statute.”
 

 In rejecting a similar due process argument based on a statute similar to section 903.286, the Supreme Court of Wisconsin, in
 
 State v. Iglesias,
 
 185 Wis.2d 117, 517 N.W.2d 175 (1994), explained that
 

 with respect to providing adequate notice, “a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.... It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property.”
 

 Id.
 
 at 184 (quoting
 
 Texaco, Inc. v. Short,
 
 454 U.S. 516, 532, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982));
 
 see also Davis v. State,
 
 928 So.2d 442, 448 (Fla. 5th DCA 2006) (rejecting the argument that the county violated the defendant’s due process rights when it failed to give him proper notice of code violations and an opportunity to correct them because “every person is presumed to know the law and ... ignorance of the law is no excuse.” (quoting
 
 Am. Home Assur. Co. v. Plaza Materials Co
 
 rp., 908 So.2d 360, 377 (Fla.2005))).
 

 It is clear that section 903.286 does not prevent a person who posts a cash appearance bond from contesting the amount withheld or whether those amounts are properly owed by the defendant. Like we did in
 
 Biddle,
 
 we conclude that section 903.286 does not violate the Due Process Clause of the Florida or Federal Constitutions.
 

 Equal Protection
 

 The Equal Protection Clauses of the U.S. and Florida Constitutions protect against invidious discrimination from acts of the Legislature that, either by the language of their enactment or in their operation, create classifications of individu
 
 *380
 
 als.
 
 See FCC v. Beach, Commc’ns, Inc.,
 
 508 U.S. 307, 316, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); U.S. Const. amend. XIV; Fla. Const. art. I, § 2. Where, as in the present case, the statute at issue does not create a suspect classification (for example, a classification based on race), it is well settled that
 

 the equal protection clause is violated only when the classification made by an act is arbitrary and unreasonable. When the differences in treatment between those included and those excluded from the class bear a real and substantial relation to the purposes sought to be attained by the act, the classification is valid as against an attack under the equal protection clause.
 

 Daniels v. O’Connor,
 
 243 So.2d 144, 146 (Fla.1971). In other words, rational basis review applies and the statutory classification must merely be based on “some difference that bears a just and reasonable relation to the statute in respect to which the classification is proposed.”
 
 Rollins v. State,
 
 354 So.2d 61, 63 (Fla.1978);
 
 see also Beach,
 
 508 U.S. at 314-16, 113 S.Ct. 2096. Section 903.286 clearly does not violate these requirements by treating licensed bail bondsmen differently from those individuals who post a cash bond. As the trial court correctly observed in the final judgment:
 

 The state created the classification of bail bondsmen to serve a legitimate state purpose and to serve the public interest. In exchange for the right to operate a profitable business and afford the opportunity for arrestees to obtain pre-trial release from incarceration when they do not have sufficient cash resources to meet bail, bondsmen operate under strict restrictions and regulations.
 
 See
 
 Chapter 648, Florida Statutes.
 

 We agree with this reasoning and conclude that section 903.286 does not violate the constitutional guarantee of equal protection under the laws.
 

 Eminent Domain
 

 The constitutional provisions relating to eminent domain prohibit the government from taking private property, unless the taking is for public use and just compensation is given.
 
 See
 
 U.S. Const. amend. V; Fla. Const. art. X, § 6. It is readily apparent that section 903.286 does not violate the Takings Clause. As the trial court correctly concluded below: “The posting of bond for oneself or another, as in this case, is totally voluntary. No one can be forced to post a bond. Those posting the bond are presumed to have knowledge of Sec. 903.286. Under these circumstances there can be no unconstitutional taking.”
 

 Single Subject Rule
 

 Our standard for reviewing legislation to determine whether it violates the single subject clause found in article III, section 6 of the Florida Constitution is highly deferential.
 
 Franklin v. State,
 
 887 So.2d 1063 (Fla.2004). This deference requires indulgence of a presumption in favor of constitutionality even when the full title of the act is lengthy.
 
 Id.
 
 at 1073-75. To overcome this presumption, the invalidity of a statute must appear beyond a reasonable doubt.
 
 Id.
 

 The single subject clause contains three requirements: 1) a law shall embrace only one subject; 2) the law may include any matter properly connected with the subject; and 3) the subject must be briefly expressed in the title.
 
 Franklin v. State,
 
 887 So.2d 1063, 1072 (Fla.2004). There is a proper connection between a provision and the subject “(1) if the connection is natural or logical, or (2) if there
 
 *381
 
 is a reasonable explanation for how the provision is (a) necessary to the subject or (b) tends to make effective or promote the objects and purposes of legislation included in the subject.”
 
 Id.
 
 at 1078. “[I]n determining whether a reasonable explanation exists for the connection between a specific provision and the single subject, the court may consider the citation name, the full title, the preamble, and the provisions in the body of the act.”
 
 Id.
 

 In
 
 Department of Highway Safety & Motor Vehicles v. Critchfield,
 
 842 So.2d 782 (Fla.2003), for example, the supreme court affirmed this court’s decision in
 
 Department of Highway Safety & Motor Vehicles v. Critchfield,
 
 805 So.2d 1034 (Fla. 5th DCA 2002), and held that chapter 98-223, Laws of Florida, violated the single subject rule because it unconstitutionally combined “the subject of assigning the collection of bad check debt to a private debt collector with the subject of driving, motor vehicles, and vehicle registration.”
 
 Critchfield,
 
 842 So.2d at 786.
 

 Unlike the law at issue in
 
 Cntchfield,
 
 the chapter law that enacted section 903.286 complies with all three requirements of the single subject clause. That law is chapter 05-236, Laws of Florida. Our review of the title shows that the subject is briefly expressed and no other subjects are stated. The short title of chapter 05-236 expresses that it is “[a]n act relating to the state judicial system.” A review of the full title and the substantive provisions of the act reveal that the title and provisions of the act relate logically and naturally to the funding and functioning of various aspects of the judicial system. For example, section 903.286 relates to securing adequate funding for the judicial system by ensuring that fines, costs, and penalties imposed on convicted criminal defendants are actually collected. Accordingly, neither section 903.286 nor the enacting legislation violates the single subject rule or any other provision of the Florida or Federal Constitutions.
 

 We note, parenthetically, that even if a single subject violation had occurred, section 903.286 was enacted effective July 1, 2005, by chapter 05-236, Laws of Florida, and was reenacted by chapter 06-3, as part of the adoption act, which is now submitted to the Legislature annually.
 
 See
 
 § 11.2421, Fla. Stat. (2006); Linda S. Jessen, Preface to Florida Statutes at vi (2006). Because Simpkins posted bond for Hunter on January 22, 2007, any single subject violation in section 903.286 was cured before Simpkins posted bond.
 
 See Dep’t of Highway Safety & Motor Vehicles v. Johnson,
 
 980 So.2d 1118 (Fla. 5th DCA 2008).
 

 Excessive Bail
 

 The Eighth Amendment to the U.S. Constitution prohibits excessive bail. Similarly, the Florida Constitution provides that, with certain specified exceptions, every person charged with a criminal offense shall be entitled to release on reasonable conditions.
 
 See
 
 U.S. Const. amend. VIII; Fla. Const. art. I, § 14. A review of the relevant authorities yields two principal conclusions relevant to our analysis of section 903.286. First, a cash appearance bond may be applied to the payment of fines or costs imposed following a criminal defendant’s conviction where expressly authorized by statute. Second, where a statute specifically permits or requires that sufficient funds to pay any unpaid court fees, court costs, and criminal penalties be withheld from the return of a cash appearance bond, the statute does not violate constitutional provisions relating to excessive bail (a) if the amount of the bond is not calculated based on the amount of fees, costs, and penalties, and (b) the purpose of granting bail is to secure the ap
 
 *382
 
 pearance of the defendant and to protect the public.
 

 For example, in
 
 Gustafson v. State,
 
 251 So.2d 689 (Fla. 4th DCA 1971), the Fourth District Court of Appeal held that where a defendant complies with the terms of his bond by appearing before the court, return of the defendant’s cash bail may not be withheld to satisfy fines and costs imposed by the court. The court stated that “application of a cash appearance bond to the payment of fines or costs imposed by the court may be had only where specifically authorized by statute.”
 
 Id.
 
 at 690. The court further observed: “Decisions in other jurisdictions sustaining application of bail money to satisfy fines and costs particularly note the express statutory provisions for their authority to so hold.”
 
 Id.
 
 Therefore, the court held that the defendant’s bail should have been refunded because, at that time, there was “no statutory authorization in Florida for deducting costs from cash bail deposited by a defendant.”
 
 Id.
 

 In
 
 United States v. Cannistraro,
 
 871 F.2d 1210 (3d Cir.1989), the Court of Appeals for the Third Circuit addressed the constitutionality of a local rule in the lower tribunal, a federal district-court, that provided any fines or costs imposed against a criminal defendant constituted a lien on the amount of the cash bond, freezing the funds until the government obtained a writ of execution. The local rule effectively permitted the government to collect unpaid court costs and fines from the cash bail deposited by the defendant. The defendant argued the rule violated the Eighth Amendment because it resulted in bail being used for a purpose other than securing the defendant’s appearance. The court rejected this argument and held the local rule was constitutionally permissible. The court concluded that the local rule “does not amount to an additional condition resulting in violation of the eighth amendment, but rather, is a temporary procedural shortcut which allows the government to avoid having to move for a freeze order while proceeding in its efforts to obtain a writ of execution.”
 
 Id.
 
 at 1213.
 

 On November 29, 1990, not long after the
 
 Cannistraro
 
 decision, Congress enacted 28 U.S.C. § 2044, which expressly required federal courts, upon motion of the U.S. Attorney, to order any money deposited with the court as a criminal appearance bond to be paid to the U.S. Attorney “to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant.” 28 U.S.C. § 2044 (1992). In
 
 United States v. Higgins,
 
 987 F.2d 543 (8th Cir.1993), the Court of Appeals for the Eighth Circuit addressed whether the statute violated the Eighth Amendment’s Excessive Bail Clause and found that it did not. The court in
 
 Higgins
 
 explained:
 

 Section 2044 does not precondition bail on the payment of any fine. It is a simple procedural mechanism by which the government, after the purposes of bail have been served, may make a motion as a judgment creditor that the court order the bond fund be delivered to it. Although garnishments of bail and the like have often been disallowed as interfering with the judicial process and harmful to the purposes of bail,
 
 see, e.g., Bankers’ Mortgage Co. v. McComb,
 
 60 F.2d 218, 221 (10th Cir.1932), as we noted, courts have long had the discretion to order the disbursal of bond funds, after the defendant has appeared and the purpose of bail has been served, to those with superior claims on the funds.
 
 See id.; United States v. Rubenstein,
 
 971 F.2d 288, 294 (9th Cir.1992);
 
 Landau v. Vallen,
 
 895 F.2d 888, 892 (2nd Cir.1990);
 
 United States v. Cannistraro,
 
 871 F.2d 1210, 1212-13 (3rd Cir.
 
 *383
 
 1989);
 
 United States v. $250,000,
 
 808 F.2d 895, 901 (1st Cir.1987); Fed.R.Civ.P. 69(a). Section 2044 is merely a procedural variant of that post-appearance discretion, and therefore does not implicate the excessive bail clause of the Eighth Amendment.
 

 Id.
 
 at 547-48.
 

 In
 
 State v. Iglesias,
 
 185 Wis.2d 117, 517 N.W.2d 175 (1994), the Supreme Court of Wisconsin held that bond money posted by a third-party depositor was properly used to pay the costs and fines assessed against the convicted defendant because the use of the bond money in this manner was expressly authorized by state statute. The court further determined the state statute, Wisconsin Statute section 969.03(4), did not violate the prohibition on excessive bail contained in the U.S. or Wisconsin Constitutions. In reaching this conclusion, the court began by observing that bail is not excessive provided “it is used for a purpose which the legislature has deemed to be a compelling state interest. When the legislature identifies such an interest, the only constitutional limitation on bail is that its amount not be excessive relative to the interest sought to be furthered.”
 
 Id.
 
 at 181 (citing
 
 United States v. Salerno,
 
 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Relying on the reasoning in
 
 Higgins,
 
 the court determined the state statute in question did not render bail excessive because it did not even amount to a “use of,” or a precondition on, bail. The court explained:
 

 Section 969.03(4) does not implicate the level at which bail is set, nor does it allow courts to set bail with an eye towards eventual imposition of a fine. Section 969.03(4) merely provides that once bail has been properly set, and after it has served its purpose of assuring the defendant’s appearance in court, the money can then be applied against the defendant’s fines. As the
 
 Higgins
 
 court explained, this does not constitute a “precondition” on or even a use of bail. Rather, it is simply a procedural mechanism by which the state can collect fines which have been duly imposed against the defendant. For these reasons, we do not believe sec. 969.03(4) violates the Excessive Bail Clause of the Eighth Amendment.
 

 Id.
 
 at 182 (footnote omitted) (citing
 
 Higgins,
 
 987 F.2d at 543).
 

 Based on the foregoing, it is clear that section 903.286, Florida Statutes, does not violate the provisions of the U.S. or Florida Constitutions relating to excessive bail. There is nothing in the provisions of section 903.286 that requires or allows the trial court to consider the amount of unpaid fines, costs, or criminal penalties in establishing the amount of the bond, and there is absolutely nothing in the provisions of the statute that requires or allows the trial court to consider the fact that the defendant has unpaid fines, costs, or criminal penalties in granting the defendant bail. We note that in the instant case, the record does not reveal that the amount of the bond and the granting of bail were based on the fact that Hunter had unpaid fines, costs, and criminal penalties in other cases.
 

 Statutory Interpretation
 

 We now turn to the second certified question — the correct interpretation of the statute. Specifically, the issue is whether the language in section 903.286 pertaining to withholding unpaid fees, costs, and penalties from a cash bond should be interpreted to mean sums owed only in the particular case for which bond was posted or whether it encompasses all of a defendant’s cases. ‘When the statute is clear and unambiguous, courts will not look behind the statute’s plain language for legislative intent or resort to rules of stat
 
 *384
 
 utory construction to ascertain intent.”
 
 Daniels v. Fla. Dep’t of Health,
 
 898 So.2d 61, 64 (Fla.2005). In instances where the statutory language is clear, we must read the statute as written and the statute’s plain and ordinary meaning must control.
 
 Id.
 

 We believe that the trial court erred by narrowly interpreting section 903.286 to apply only to fines, costs, and penalties assessed in the case in which the bond was posted because the plain language of the statute declares that “sufficient funds to pay
 
 any
 
 unpaid court fees, court costs, and criminal penalties,” shall be withheld from the return of a cash bond. § 903.286, Fla. Stat. (2007) (emphasis added). The statute also clearly states that if the bond funds are insufficient “to pay
 
 all
 
 unpaid court fees, court costs, and criminal penalties, the clerk of the court shall immediately obtain payment from the defendant or enroll the defendant in a payment plan....”
 
 Id.
 
 (emphasis added). We believe that the statutory language clearly establishes the Legislature’s intention that the statute be applied to all of a defendant’s cases in which fines, costs, or criminal penalties remain unpaid.
 

 If the Legislature intended to restrict section 903.286 to the case in which the bond was posted, it certainly knew how to employ the appropriate language to convey that meaning. Section 903.105, Florida Statutes, for example, allows a defendant to post an appearance bond by depositing a certain sum of money with the clerk or the sheriff.
 
 [4]
 
 Section 903.105(5) specifically states:
 

 If a final judgment for a fine and court costs, or either a fine or court costs, is entered
 
 in an action in which a deposit has been made
 
 in accordance with this section, the balance of such deposit, after deduction of bail costs as provided for herein, shall be applied to the satisfaction of the judgment.
 

 § 903.105(5), Fla. Stat. (2007) (emphasis added). This statute makes it apparent that the appearance bond will only be applied to satisfy fines, costs, or penalties associated with the case in which the bond was posted. However, when the Legislature drafted section 903.286, rather than include language similar to that used in section 903.105(5) to restrict application of the bond proceeds to the case in which the bond was posted, it included language that specifically states that the statute applies to “a cash bond posted on behalf of a criminal defendant” and further included very broad and all-inclusive language that the bond proceeds will be used to pay “any” and “all” of a defendant’s unpaid fines, costs or criminal penalties. § 903.286, Fla. Stat. (2007).
 

 Our interpretation of section 903.286 is supported by the purpose for which it was enacted. Section 903.286 was enacted in 2005 as part of legislation aimed at fulfilling Revision 7 to Article V of the Florida Constitution, which allocated state court system funding among the state, counties, and users of the courts.
 
 See
 
 Fla. H.R. Judiciary Comm., HB 1935 (2005) Staff Analysis (April 26, 2005);
 
 see also
 
 Fla. Const. art. V, § 14(b) (“All funding for the offices of the clerks of the circuit and county courts ... shall be provided by adequate and appropriate filing fees for
 
 *385
 
 judicial proceedings and service charges and costs for performing court-related functions as required by general law.”). Thus, the purpose of section 903.286 is to secure adequate funding for the judicial system by ensuring that the costs, fees, and criminal penalties assessed against convicted criminal defendants are actually collected. Our interpretation of the statute directly advances this purpose.
 

 Conclusion
 

 We conclude that Simpkins has failed to meet his burden of overcoming the strong presumption of constitutionality that cloaks section 903.286. Having analyzed each constitutional challenge raised and the arguments in support thereof, we conclude that the first restated certified question should be answered in the negative. Based on our analysis of the clear and unambiguous language of the statute, we conclude that the second restated certified question should be answered in the affirmative.
 

 Here, Simpkins knew full well when he signed the bond form that the money would be used to pay all of Hunter’s outstanding fines, costs, and criminal penalties in all of his cases. The bond form clearly informed Simpkins of that fact, and posting at the Brevard County jail advised inmates and their families that cash appearance bonds would be applied in that manner. Nevertheless, when Simpkins subsequently objected, he was afforded a full and fair hearing where those objections were considered by the trial court, and now, by this court. Having concluded that his constitutional objections fail and that his restrictive reading of section 903.289 is inappropriate, we affirm that part of the final judgment finding the statute constitutional and reverse that part of the judgment requiting repayment by the Clerk of the money used to pay all of Hunter’s fines, costs, and criminal penalties in any of his cases.
 

 AFFIRMED in part; REVERSED in part.
 

 ORFINGER, J. and PLEUS, R., Senior Judge, concur.
 

 [1]
 

 . We note that effective July 1, 2008, the Legislature amended section 903.286. The amended statute makes minor grammatical changes to the previous version, which it designated as subsection 1, and adds subsection 2, which requires that cash bonds "prominently display a notice explaining that all funds are subject to forfeiture and withholding by the clerk of the court for the payment of court fees, court costs, and criminal penalties on behalf of the criminal defendant regardless of who posted the funds.” § 903.248(2), Fla. Stat. (2008). Simpkins argued to the trial court that since the bond was not posted by Hunter, it should not be used to pay his unpaid fines, costs, or criminal penalties in all of his cases. The courts that have considered this specific issue have upheld the application of the cash bond posted by third-party depositors to the payment of the defendant’s unpaid costs, fines, and penalties based upon statutory provisions similar to section 903.286.
 
 See, e.g., State v. Iglesias,
 
 185 Wis.2d 117, 517 N.W.2d 175 (1994). However, Simpkins does not make that argument in the instant proceedings and we will not address it any further. We will apply the version of the statute prior to the 2008 revision.
 

 [2]
 

 . Hunter owed $3,530.05 as restitution in case number 05-00-CF-042144 (third-degree grand theft); he owed $121.68 as attorney fees in case number 05-07-CT-050626 (reckless driving, possession of cocaine, and careless driving); and he owed $284.39 as attorney fees and court costs in case number 05-05-MM-035765 (prostitution, lewdness, and assignation).
 

 [3]
 

 . The opinion in
 
 Biddle
 
 states that the trial court was correct in rejecting the constitutional challenge raised by petitioner to the validity of section 903.286.
 
 Biddle v. Ellis,
 
 976 So.2d 103 (Fla. 5th DCA),
 
 review denied,
 
 987 So.2d 79 (Fla.2008). It is appropriate for us to review our records in
 
 Biddle
 
 to determine what constitutional challenges were considered and rejected in that case.
 
 See Sinclair v. State,
 
 853 So.2d 551, 552 n. 2 (Fla. 1st DCA 2003);
 
 Miami Stage Lighting, Inc. v. Budget Rent-A-Car Sys., Inc., 712
 
 So.2d 1135, 1137 n. 2 (Fla. 3d DCA),
 
 review denied,
 
 728 So.2d 200 (Fla.1998);
 
 In re Scala,
 
 523 So.2d 714, 718 n. 1 (Fla. 4th DCA 1988) (Glickstein, J., dissenting);
 
 Arnold Lumber Co. v. Harris,
 
 503 So.2d 925 (Fla. 1st DCA 1987);
 
 Gulf Coast Home Health Servs. of Fla., Inc. v. Dep't of Health & Rehabilitative Servs.,
 
 503 So.2d 415, 417 (Fla. 1st DCA 1987);
 
 Barry Hinnant, Inc., v. Spottswood,
 
 481 So.2d 80, 81 n. 1 (Fla. 1st DCA 1986);
 
 see also Ashman v. State,
 
 886 So.2d 1079, 1081 (Fla. 5th DCA 2004);
 
 Cooper v. State,
 
 845 So.2d 312 (Fla. 2d DCA 2003). Having done so, it is clear from those records that the petitioner in
 
 Biddle
 
 challenged the constitutionality of section 903.286 on the basis of due process, equal protection, and eminent domain. The same arguments directed to each constitutional challenge that were considered and rejected in
 
 Biddle
 
 are raised in the instant proceedings.
 

 [4]
 

 . Oddly, even though section 903.105 was enacted in 1982, it provides that it will become effective only if chapter 648, Florida Statutes, is repealed. Chapter 648 has not been repealed. Nevertheless, the provisions of section 903.105(5) clearly illustrate that the Legislature knows how to include provisions in a bond statute that restrict application of the bond proceeds to satisfaction of fines, costs, and criminal penalties imposed only in the case in which the bond was posted.